1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   GALLAGHER BENEFITS SERVICES, INC,      No   C  07-5495  VRW

12          Plaintiff,                           ORDER

13      v

14   JAMES DE LA TORRE AND ANDREINI &
     COMPANY,
15
            Defendants.
16

17   _____/

18

19          On October 29, 2007, Gallagher Benefit Services, Inc

20   (Gallagher) filed a complaint and application for Temporary

21   Restraining Order (TRO) in this court against James De La Torre

22   ("De La Torre") and Andreini & Company ("Andreini") (collectively

23   "defendants").  Gallagher is a company that sells insurance

24   products to federal employees and federal associations, through its

25   "Federal First" program.  Doc #1 ¶¶6-9.  De La Torre was employed

26   by Gallagher on or about October 5, 1998 as an account executive.

27   As a condition of his employment, De La Torre signed Gallagher's

28   Executive Agreement, wherein he agreed in relevant part:

**United States District Court**
For the Northern District of California

> [De La Torre] agrees that, for a period of two (2) years
> following the termination of his employment for any reason
> whatsoever, he will not divulge [Gallagher's] Confidential
> Information or make use of it for his own purpose or the
> purpose of another.  In addition, [De La Torre] understands
> and agrees that for a period of two (2) years following the
> termination of his employment for any reason whatsoever, he
> will not, directly or indirectly, solicit, place, accept, aid,
> counsel or consult in the renewal, discontinuance or
> replacement of any insurance by, or handle self-insurance
> programs, insurance claims or other insurance administrative
> functions for, any existing [Gallagher] account or any
> actively solicited prospective account of [Gallagher] for
> which he performed any of the foregoing functions during the
> two-year period immediately preceding such termination, if the
> loyal and complete fulfillment of his duties in connection
> with the performance of any of the foregoing functions would
> likely call upon [De La Torre] to reveal, make judgments upon,
> or to otherwise use or divulge any of the Confidential
> Information or to otherwise violate any provision of this
> Agreement.

Doc #1, Ex A ¶13A.

De La Torre voluntarily resigned from Gallagher on or about October 15, 2007 in the position of Vice President.  Doc #1 ¶3.  Gallagher Branch Manager, David Brown, represents that De La Torre handled business and/or negotiated with the following Gallagher clients and prospective clients during De La Torre's employment with Gallagher: National Counsel of Bankruptcy Clerks, Department of Justice Recreation Association, Treasury Department Recreation Association, Nurses of the Veterans Association, American Foreign Service Association, American Society of Military Comptrollers, Federal Firefighters Association, National Association of Air Traffic Specialists, Environmental Protection Agency Employee Recreation Association and Federal Law Enforcement Officers Association.  Doc #3 ¶¶5, 22.

De La Torre is now employed by Andreini, a company also in the business of private insurance brokerage.  Doc #1 ¶4. Gallagher alleges that:

1
2
3
4
5
6
7
8

> Since leaving Gallagher, De La Torre utilized or disclosed Gallagher's confidential information about current clients and contacts in this niche market to solicit those clients on behalf of Andreini, and for himself, in order to terminate Gallagher's contracts with certain of Gallagher's contracts [sic] with certain existing clients and to persuade prospective clients to sign contracts with Andreini. Specifically, De La Torre has utilized Gallagher's confidential and proprietary information to target existing clients and persuaded them to terminate their business with Gallagher and follow De La Torre to Andreini.  De La Torre has also utilized Gallagher's confidential and proprietary information to target Gallagher's prospective clients who had not yet purchased coverage through Gallagher to follow De La Torre to Andreini.

9
10
11
12
13
14
15

Doc #1 ¶37.  Gallagher further alleges that De La Torre has utilized Gallagher's confidential and proprietary information to target and solicit at least two of Gallagher's clients that De La Torre serviced before moving to Andreini.  Doc #1 ¶42.  Gallagher states that its current clients have alerted Gallagher to De La Torre's solicitation.  Doc #1 ¶46.

16
17

    On October 30, 2007, this court entered a temporary restraining order, which provided as follows:

18
19
20

> (a) defendants shall not use or disclose confidential information obtained by De La Torre during his employment with Gallagher;

21
22
23

> (b) defendants shall not fail to return to Gallagher any confidential, proprietary and trade secret information obtained by De La Torre during his employment with Gallagher;

24
25
26
27
28

> (c) defendants shall not fail to return to Gallagher all originals and all copies of files, data and information removed by De La Torre from Gallagher, including, but not limited to, any disc and data removed from Gallagher by De La Torre, all electronic information regarding Gallagher stored

3

on De La Torre's Blackberry and all information e-mailed to De La Torre's personal e-mail account from his Gallagher e-mail account;

(d) defendants shall not fail to preserve without change from the date of this order all discs and electronic storage devices to which De La Torre had or has access during his employment with Andreini; and

(e) defendants shall not solicit clients of Gallagher whose business De La Torre handled while working at Gallagher, and defendants shall not place or accept the insurance business of such clients.

Doc #8. Defendants were further ordered to appear on November 5, 2007 to show cause, if any, why the temporary restraining order should not be entered as a preliminary injunction. Doc #8.

At the hearing, defendants stipulated to sections (a)-(d) of the restraining order but refused to agree to a restraining order prohibiting them from soliciting accounts of Gallagher which defendant De La Torre serviced while there employed or prohibiting defendants from accepting such business. 11/5/07 Hr'g Tr, Doc #14. Counsel for defendants stated:

> Now, your Honor, I can tell you that it's not Mr De La Torre or Andreini's intention until further order of this Court to try and take any further accounts or business from Gallagher. What they have, they got before there was any restraining orders, and we'd like to litigate that issue as to the propriety of them doing business with these people but not under a restraining order.

Doc #14 at 9:7-14.

Defendants argued that before De La Torre became employed by Gallagher, De La Torre developed educational seminars used to sell insurance to federal employees and, accordingly, these

4

seminars did not constitute proprietary information belonging to Gallagher and De La Torre should not be enjoined from using these seminars.  Doc #14 at 4-7.  Defendants also argued that an injunction was unnecessary because actual damages would be ascertainable given the recordkeeping nature of the business.  Doc #14 at 9:15-10:4.  In response, counsel for plaintiff clarified that it is not the seminars that Gallagher seeks to protect but rather "the prospects, the clients, the method of doing business." Doc #14 at 11-13.  Counsel for plaintiff also argued that damages might not be sufficient and that injunctive relief was necessary because defendants' conduct threatened to put Gallagher out of business.  Doc #14 at 21:24-22:10.

The court lifted the TRO as to section (e) on the grounds that, even if it could be proved that De La Torre improperly solicited clients from Gallagher, it was unlikely that harm would be so great as to make the court unable to rectify it with damages and/or further injunctive relief.  Doc #14 at 20:13-20; 22:24-23:10.  The court ordered further briefing and set the matter for further hearing on November 15, 2007.  Doc #14 at 19-23.  The matter is now fully briefed and argued.

"In the Ninth Circuit, a district court may issue a preliminary injunction when the moving party demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and the balance of hardships tips sharply in its favor."  See Lockheed Missile & Space Co v Hughes Aircraft Co, 887 F Supp 1320, 1322 (ND Cal 1995), citing Arcamuzi v Continental Air Lines, Inc, 819 F2d 935, 937 (9th Cir 1987); Los

5

United States District Court
For the Northern District of California

Angeles Memorial Coliseum Comm'n v National Football League, 634 F2d 1197, 1201 (9th Cir 1980). "These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases." Big Country Foods, Inc v Board of Educ of the Anchorage School Dist, 868 F2d 1085, 1088 (9th Cir 1989). Under either formulation of the test, in order to obtain preliminary injunctive relief plaintiff must show a "fair chance of success on the merits, or questions serious enough to require litigation." Arcamuzi, 819 F2d at 937.

Gallagher's motion for order to show cause regarding preliminary injunction, which will be treated here as a motion for preliminary injunction, focuses on defendants' alleged misappropriation of trade secrets and the use of those trade secrets to compete against Gallagher. Amongst other claims, Gallagher argues that the alleged misappropriation of trade secrets violates the Uniform Trade Secrets Act (UTSA), codified as California Civil Code § 3426 et seq, and California Business & Professions Code § 17200 et seq, which broadly prohibits unfair competition. Doc #1. Both of these statutes expressly permit injunctive relief. See Cal Civ Code § 3426.2 and Cal Bus & Prof Code § 17203.

Gallagher alleges that defendants misappropriated its customer lists and other information and that these items constitute trade secrets. Doc #1. "Trade secrets" are defined in the UTSA as: "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from

United States District Court

For the Northern District of California

not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal Civ Cod § 3426.1. Customer lists and related information that are "procured by substantial time, effort, and expense" are protectable trade secrets under this provision. Courtesy Temporary Service, Inc v Camacho, 272 Cal Rptr 352, 357 (Cal App 1990).

Gallagher asserts that its proprietary information "has been accumulated, refined and developed over many years and at great expense." Doc #1 ¶8. Gallagher further asserts that it "has invested substantial time and money in developing information and knowledge about the * * * industry, its employees, volunteers and preferences with regard to a wide range of insurance products." Doc #1 ¶10. This information includes:

> data related to Gallagher's unique marketing and servicing programs, procedures and technique; business, management and personnel strategies; criteria and formulae used by Gallagher in pricing its insurance products and claims management, loss control, and information management services; the structure and pricing of special insurance packages and products that Gallagher has negotiated with various underwriters; lists of prospective clients, their interests and needs; the identity, authority and responsibility of key contacts at Gallagher accounts and at prospective client companies and associations; highly sensitive details concerning the structure, conditions and extent of their existing insurance coverages; policy expiration dates and renewal information, if applicable; premium accounts; commission rates; risk management service arrangements; loss histories; and other data showing the particularized insurance requirements and preferences of the accounts.

Doc #1 ¶11.

Gallagher represents that "[t]here is no comparable program in the marketplace that combines the administration, marketing, and website and member support as Gallagher's Federal

First business [and] Gallagher has spent extensive resources and time collecting and analyzing data about special insurance packages that the Company has negotiated with various underwriters and the peculiar risks inherent in their operations."  Doc #1 ¶8.  Although Gallagher's evidence in support of these allegations is not overwhelming, Gallagher has provided a declaration by its Area President, David Brown, that discusses the content of Gallagher's databases and the measures taken by Gallagher to keep its information confidential.  See Brown Decl (Doc #3) at ¶¶7-13.  As a result, Gallagher has demonstrated a reasonable likelihood that its customer lists and other data qualify as trade secrets.

Gallagher alleges that, upon his resignation, De La Torre initially agreed to meet with Brown to provide detail about De La Torre's work, including clients and prospects, educational commitments made, policy holder information and the identities of key decision makers on De La Torre's accounts.  Doc #9 at 7. Gallagher represents that De La Torre reneged on this agreement. Doc #9 at 7; Doc #3 ¶20.  Gallagher also alleges that, upon his resignation, De La Torre continued to use his Blackberry to access Gallagher's confidential and proprietary information, email programs and servers.  Doc #1 ¶35.  A search of defendants' electronic files, conducted by a forensic scientist hired by Gallagher, revealed that on October 14, 2007, the day before De La Torre resigned, he accessed and copied 150 files from Gallagher. Doc #22 ¶¶6-9.  It was also discovered that on July 3, 2007 between 2:44 and 2:51pm, De La Torre accessed and likely copied 1117 files. Doc #22 ¶¶6-9.  According to Gallagher, these files include

\\

8

United States District Court

For the Northern District of California

marketing budgets and client and program business plans, among
other files — all Gallagher property.  Doc #18 at 7.

As stated above, after leaving Gallagher, De La Torre
joined Andreini, one of Gallagher's competitors.  De La Torre and
Andreini have used Gallagher's proprietary information to solicit
the National Council of Bankruptcy Clerks (NCBC) and the Federal
Law Enforcement Officers Association (FLEOA), Gallagher's current
and prospective client and endorser.  Doc #19 ¶¶3-4.  Brown
represents that FLEOA and NCBC constitute roughly 63% of
Gallagher's entire business, and that loss of this business will
result in an estimated loss to Gallagher of at least $750,000 per
year.  Doc #19 ¶5.

In sum, Gallagher has produced evidence showing that De
La Torre took and utilized information central to Gallagher's
competitive advantage, including customer lists, for De La Torre's
own use in the course of his employment with one of Gallagher's
competitors.  It is likely that many of the allegedly
misappropriated materials would qualify as trade secrets under the
UTSA.  But defendants' alleged misconduct exceeds trade secret
misappropriation.  Even if all the materials appropriated by
defendants do not qualify as trade secrets, defendants'
appropriation of Gallagher's materials in order to compete against
Gallagher and target Gallagher's customers should still be enjoined
under California Business and Professions Code section 17200 et
seq, which prohibits unfair competition.  See <u>Courtesy Temporary
Service</u>, 272 Cal Rptr at 360.  "Indeed, the cases are legion
holding that a former employee's use of confidential information
obtained from his former employer to compete with him and to

9

solicit the business of his former employer's customers, is regarded as unfair competition." 272 Cal Rptr at 360.

Gallagher has, therefore, demonstrated a probability of success on the merits. In order to obtain preliminary injunctive relief, Gallagher must also demonstrate some degree of irreparable harm. In general, the imminent use of a trade secret constitutes irreparable harm. See e g, Campbell Soup Co v ConAgra, Inc, 977 F2d 86, 92-93 (3rd Cir 1992). This is particularly true when the trade secret is a customer list, for solicitation of plaintiff's customers by defendants cannot be remedied by money damages alone. See e g, American Credit Indemnity Co v Sacks, 262 Cal Rptr 92, 96-97. Moreover, to the extent that defendants have already persuaded clients to terminate their contracts with Gallagher, Gallagher's ability to serve its customers has been compromised. The consequent loss of business and good will cannot be compensated by damages alone.

As a result, under the facts as presented, Gallagher has shown a probability of success on the merits and a likelihood of irreparable harm. Gallagher represents that it only seeks an injunction as to those Gallagher clients and prospective clients with whom De La Torre conducted business or attempted to conduct business during his employment with Gallagher. Doc #1 at 23:3-6. The court finds this to be consistent with the terms of De La Torre's Executive Agreement. Doc #1, Ex A ¶ 13A. Accordingly,

IT IS HEREBY ORDERED, effective upon the posting of the bond hereinafter provided and until October 14, 2009, or such earlier time as this order shall be modified or withdrawn, that defendants and both of them are hereby enjoined and restrained from

soliciting, placing or accepting business from the following current and prospective clients of Gallagher: National Counsel of Bankruptcy Clerks, Department of Justice Recreation Association, Treasury Department Recreation Association, Nurses of the Veterans Association, American Foreign Service Association, American Society of Military Comptrollers, Federal Firefighters Association, National Association of Air Traffic Specialists, Environmental Protection Agency Employee Recreation Association and Federal Law Enforcement Officers Association.

Gallagher shall post a bond in the amount of $30,000 not later than November 20, 2007.


IT IS SO ORDERED.

_____

VAUGHN R WALKER

United States District Chief Judge